Andrew D. Skale (SBN 211096)
askale@mintz.com
Ben L. Wagner (SBN 243594)
bwagner@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Rd., Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile:  (858) 314-1501

Attorneys for Plaintiff,
UNITE EUROTHERAPY, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE EUROTHERAPY, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>WALGREEN CO., an Illinois Corporation, WALGREENS.COM, INC., an Illinois Corporation; DOES 1-10<br><br>                    Defendants. | Case No. 3:16-CV-01706-BTM-JMA<br><br>**UNITE EUROTHERAPY, INC.'S OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED.R.CIV. 12(B)(6) [DKT. 14]**<br><br>Date:        October 21, 2016<br>Time:       11:00 a.m.<br><br>The Honorable Barry Ted Moskowitz |

# <u>TABLE OF CONTENTS</u>

I.    FACTUAL BACKGROUND ............................................................... 1

     A.    The Universal Distribution Agreement Prohibits Online
          Sales by the Distributor, and Sales to Any Reseller Who
          Has Not Agreed to the Same Prohibition or Has Breached
          the Prohibition ........................................................................ 1

     B.    Walgreens' Online Sales of Unite Products and the
          Notices that Walgreens Received and Disregarded ......................... 3

II.   STANDARD OF REVIEW ............................................................... 4

III.  ARGUMENT ................................................................................. 5

     A.    Unite Sufficiently Pled Intentional Interference With
          Contractual Relations .............................................................. 5

          1.    Valid Contract Between Plaintiff and a Third Party ................ 6

          2.    Walgreens Knew About the Contract ................................. 6

          3.    Walgreens' Intentional Acts Were Designed to
                Induce a Breach or Disruption of Unite's
                Contractual Relationship ............................................. 9

          4.    Actual Breach or Disruption of the Contractual
                Relationship ........................................................... 10

          5.    Resulting Damage ..................................................... 10

     B.    Unite Properly Pled its Unfair Competition Counts ...................... 11

          1.    Unfair Competition Under 15 U.S.C. § 1125 ...................... 11

          2.    Common Law Unfair Competition .................................. 12

          3.    Unfair Competition Under Cal. Bus. & Prof. Code
                § 17200 ................................................................ 13

IV.  CONCLUSION .......................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aagard v. Palomar Builders, Inc.*,
  344 F. Supp. 2d 1211 (E.D. Cal. 2004) ................................................................ 8

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ............................................................................. 8

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1988) ............................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 4, 5

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006 (C.D. Cal. 2013) ................................................................ 11

*Carolina Cas. Ins. Co. v. Team Equip., Inc.*,
  741 F.3d 1082 (9th Cir. 2014) ........................................................................... 11

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
  16 F. Supp. 3d 1141 (S.D. Cal. 2014) .................................................................. 5

*Codexis, Inc. v. EnzymeWorks, Inc.*,
  2016 U.S. Dist. LEXIS 106542 (N.D. Cal. Aug. 11, 2016) ................................ 13

*Cortina v. Goya Foods, Inc.*,
  94 F. Supp. 3d 1174 (S.D. Cal. 2015) .................................................................. 8

*E & E Co., Ltd. v. Kam Hing Enterprises, Inc.*,
  429 F. App'x 632 (Unpub. 9th Cir. 2011) ............................................................ 8

*Hewlett-Packard Co. v. Cigna Prop. & Cas. Ins. Co.*,
  1999 U.S. Dist. LEXIS 20655 (N.D. Cal. Aug. 24, 1999) .................................. 13

*Janda v. Madera Community Hosp.*,
  16 F. Supp. 2d 1181 (E.D. Cal. 1998) .................................................................. 8

*Lee Myles Associates Corp. v. Paul Rubke Enterprises, Inc.*,
  557 F. Supp. 2d 1134 (S.D. Cal. 2008) ................................................................ 8

*Lowell v. Mother's Cake & Cookie Co.*,
    79 Cal. App. 3d 13 (1978) .................................................................................8

*Nordstrom v. U.S. Bank, N.A., Inc.*,
    2012 U.S. Dist. LEXIS 102267 (S.D. Cal. July 18, 2012) ......................5

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) ...................................................................................9

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) .......................................................................4

*Sebastian Int'l, Inc. v. Russolillo*,
    162 F. Supp. 2d 1198 (C.D. Cal. 2001) ...................................................7

*Sebastian Int'l, Inc. v. Russolillo*,
    No. CV 00-3476 SVW, 2005 U.S. Dist. LEXIS 45828 (C.D. Cal.
    Feb. 22, 2005) .............................................................................................10

*U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*,
    2013 U.S. Dist. LEXIS 162564 (S.D. Cal. Nov. 12, 2013).....................5

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................1, 11, 13, 14

Lanham Act (15 U.S.C. §1125) ......................................................1, 11, 12

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................8, 9

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 4, 10

Plaintiff Unite Eurotherapy, Inc. submits this Opposition to the motion of Defendants Walgreen Co. and Walgreens.com, Inc. (together, "Walgreens") to dismiss all of the claims brought by Unite in its First Amended Complaint ("FAC"). The claims include:

1.     Intentional interference with contractual relations; and

2.     Unfair competition pursuant to the Lanham Act (15 U.S.C. §1125), common law, and Cal. Bus. & Prof. Code §17200 *et seq*.

Walgreens was insistent on burdening Unite and this Court with an irresponsible pleadings challenge.  It brought this Motion even though it had to violate almost every cardinal rule of a Fed. R. Civ. P. 12(b)(6) challenge, including: (1) narrowly reading and misreading the allegations, (2) drawing inferences (and unreasonable ones at that) in its favor instead of Unite's, and (3) outright ignoring the portions of the FAC and Exhibits that did not suit the purposes of its arguments. Unite properly pled facts plausibly supporting every element of each claim. Walgreens' Motion to Dismiss should be denied.

# I.     FACTUAL BACKGROUND

### A.     The Universal Distribution Agreement Prohibits Online Sales by the Distributor, and Sales to Any Reseller Who Has Not Agreed to the Same Prohibition or Has Breached the Prohibition

Unite develops and sells boutique hair care products under the federally-trademarked UNITE brand.  FAC ¶¶ 7-8.  Unite spends significant resources testing and researching its products to ensure superior performance, and restricts distribution of its products.  *Id.* ¶¶ 7, 9.  Specifically, Unite contracts with every single reseller of its products to limit sales to specific channels and prevent unauthorized online sales. *Id.* ¶ 10-11.  Unite places these strict controls on its products to develop and maintain its brand image, ensure the quality of its products, and provide customers with product education and support.  *Id.* ¶ 14.

Unite carefully limits sales of its professional hair care products to two mediums: (1) authorized resellers, and (2) Unite's proprietary website.  FAC ¶¶ 9, 12.

1

This fosters its recognized image of quality and ensures customer support.  *Id.* ¶ 14.
These strict controls also protect the quality of Unite's products.  *Id.* ¶ 13.  To
safeguard its goodwill and reputation, Unite requires that all of its authorized resellers
sign and abide by a Distribution Agreement that, among other things, put in place
absolute prohibitions on selling Unite products online – whether by the distributor
itself or by resellers who purchase from the distributor.  *Id.* ¶¶ 9, 10.

Specifically, the Distribution Agreement places strict limits on who the
distributors may sell to.  The distributors are not permitted to sell Unite products
through "excluded channels" which include "online or internet channels, beauty
supply stores, salons or retailers that dedicate less than 50% of the square footage in
any facility to performing hair services, and any business that does not perform
professional, non-discount hair services."  *Id.* ¶ 10, Ex. 3 at 1.

In addition, the Distribution Agreement requires each distributor to have a form
Anti-Diversion Agreement signed by any resellers it is selling to (which would
include Walgreens).  FAC ¶ 11, Ex. 3 at ¶ 2.8.  "Distributor will not distribute any
Product to any customer or account ("Account") unless and until such Account has
executed Unite's most current form of anti-diversion agreement as Unite may provide
Distributor from time to time, the current form of which is attached hereto ("Anti-
Diversion Agreement")… Distributor may not modify the terms of the Anti-
Diversion Agreement and will not distribute Products to Accounts that have not
signed the Anti-Diversion Agreement or have breached the Anti-Diversion
Agreement, and Distributor will enforce Anti-Diversion Agreements against any
Account in breach (or alleged breach) thereof."  *Id.*

In turn, the Anti-Diversion Agreement prohibits resellers from selling Unite
products in bulk, or to "any diverter or redistributors of products or to any other
person or entity reasonably believed to be purchasing [Unite products] for subsequent
resale."  *Id.*  The Anti-Diversion Agreement also states that the reseller "will not sell

product **on the internet**, catalog sales or other distance selling."  FAC Ex. 3 at p. 16

¶3.  Thus, the Distribution Agreement requires that distributors cannot get around

online sales by selling to a reseller for their online sales.  Instead, distributors must

ensure that their entire distribution chain – no matter how many resellers are

introduced into it – has the online sales prohibition in place, and that they will not

further sell to resellers who violate this prohibition.

### B.    Walgreens' Online Sales of Unite Products and the Notices that Walgreens Received and Disregarded

Despite Unite's tight contractual controls with its distributors, Unite discovered

that Walgreens was and is impermissibly selling Unite products online.  Almost all

attempted returns of Unite products are attributable to unauthorized online sales –

those products tend to be older and have lost much of their quality.  *Id*. ¶ 13.  These

issues are present with the older Unite products that Walgreens is impermissibly

selling online.  *Id*. ¶ 17-18.

Over the course of a half year, Unite sent Walgreens three letters repeatedly

informing Walgreens of its restrictive contracts with resellers and demanding that

Walgreens stop its unauthorized online sales (*Id*. ¶ 23):

- Aug. 11, 2015 Letter: "Unite's products are exclusively sold through certain distinct channels.  Sellers of Unite's products contractually agree not to sell those products over the internet."  FAC Ex. 4.

- October 19, 2015 Letter: "Walgreens has been on notice since at least August 11, 2015 that Unite's re-sellers have a contractual obligation to not sell Unite's products online.  Walgreens therefore continues to intentionally interfere with Unite's contracts each time it purchases more Unite products by diverting product from salons through its continuing unauthorized online sales."  FAC Ex. 5.

- February 22, 2016 Letter: "As a reminder, Walgreens has been on notice since at least August 11, 2015 that Unite's re-sellers have a contractual obligation to not sell Unite's products online.  Walgreens continues to intentionally interfere with Unite's contracts each time it purchases more

1            Unite products by diverting product from salons through its continuing
2            unauthorized online sales." FAC Ex. 6.

3       Despite each of these unequivocal demands, Walgreens did not cease the

4 unauthorized online offering and sale of Unite products it obtained from a distributor

5 in violation of the distributor's contractual restrictions. FAC ¶ 18. Rather than

6 comply with the demands, Walgreens has continued to "interfere with UNITE's

7 reseller relationships and Distribution Agreements by purchasing from resellers to

8 sell such products online at walgreens.com." *Id.* ¶ 23. As of September 14, 2016,

9 Walgreens is selling 15 SKUs of Unite products. *Id.* ¶¶ 18, 23.

10       Walgreens' unlawful actions have seriously harmed Unite. Unite's resellers

11 are complaining and ceasing sales of Unite products because they found out that

12 Walgreens is selling those products online. *Id.* ¶ 19. Numerous Unite clients are

13 threatening to drop the Unite brand because Unite products are available on

14 Walgreens' website. *Id.* And Walgreens is diluting the value of the UNITE brand.

15 *Id.* ¶¶35-36.

16 **II.    STANDARD OF REVIEW**

17       When deciding whether to dismiss a claim under Fed. R. Civ. P. 12(b)(6), the

18 court must take the claimant's allegations as true and draw all reasonable inferences

19 in the claimant's favor. *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of*

20 *Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To succeed on a Rule 12(b)(6) motion, the

21 movant must show either a "lack of a cognizable legal theory" or "the absence of

22 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

23 *Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

24       In contrast, to survive a Rule 12(b)(6) motion, a complaint need not contain

25 detailed factual allegations; rather, it need only plead "enough facts to state a claim to

26 relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

27 (2007)). Dismissal is only appropriate if the complaint "fail[s] *in toto* to render

28

4

plaintiffs' entitlement to relief plausible." *Id.* at 569 n.14.

This standard considers whether "the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted." *U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*, No. 13-cv-349-BEN (DHB), 2013 U.S. Dist. LEXIS 162564, at *4 (S.D. Cal. Nov. 12, 2013).

Thus, as long as "Plaintiff's claims [] 'raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the motion to dismiss should be denied. *Nordstrom v. U.S. Bank, N.A., Inc.*, No. 11-cv-1554 BEN (KSC), 2012 U.S. Dist. LEXIS 102267, at *5-6 (S.D. Cal. July 18, 2012) (*quoting Twombly*, 550 U.S. at 555).

## III.   ARGUMENT

### A.   Unite Sufficiently Pled Intentional Interference With Contractual Relations

Unite pled detailed facts to support each element of its intentional interference with contractual relations claim.  A claim for intentional interference with contractual relations contains five elements, all of which Unite properly alleged:

> The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach [or] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1157 (S.D. Cal. 2014) (*quoting Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998) (*quoting Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, (1990)).

The intentional interference claim as alleged meets the *Twombly* standard.

### 1.     Valid Contract Between Plaintiff and a Third Party

Unite attached to its amended complaint as Exhibit 3 the form of the Distribution Agreement signed by all authorized resellers since 2010.  FAC ¶11. Because every reseller since 2010 has signed this form Distribution Agreement, Unite has plausibly pled the valid contract between itself and the third party.  Although Walgreens has refused to disclose the name of the reseller it uses, discovery will reveal which of the Unite resellers are selling to Walgreens, at which point that reseller can also be added to this case.

Unite carefully limits sales of its professional hair care products to two mediums: (1) authorized resellers, and (2) Unite's proprietary website.  FAC ¶¶ 9, 12. The material terms of the form Distribution Agreement signed by each Unite reseller have been attached to the Complaint and alleged.  *Id.* ¶¶ 10-11.  The reseller agrees not to sell online, and agrees to obtain an executed version of Unite's Anti-Diversion Agreement from any subsequent reseller prior to selling to them (which includes a prohibition of online sales).  FAC ¶¶ 10-11 & Ex. 3 at 1, 16-17.

Unite has pled the relevant terms of the Distribution Agreement, and no suggestion has been made as to why the pled Distribution Agreement is not a valid agreement between Unite and a third party.  Therefore, Unite has sufficiently alleged a valid contract between itself and a third party.[1]

### 2.     Walgreens Knew About the Contract

Walgreens may not have known it was interfering with Unite's distributor agreements initially (giving Walgreens the benefit of the doubt), but the demand letters removed any such ignorance long ago.  FAC ¶¶ 15, 23.  The first letter told

---

[1]Walgreens' argument about the date on Exhibit 3, the form Distribution Agreement, fails to be persuasive, and more importantly, is improper in this motion.  Walgreen MTD at 5-6.  The allegations state this Distribution Agreement form is the same one that has been used since 2010.  FAC ¶¶ 10-11.  There is nothing inconsistent about attaching an example of the form that happens to have a more recent date.  This is but an example of Walgreens stating speculative inferences, and refusing to draw all reasonable inferences in Unite's favor.

Walgreens about the contractual obligations of the Unite resellers, and the second and third letter reiterated the contracts, and expressly told Walgreens its purchases for online sales were interfering with those contracts:

- Aug. 11, 2015 Letter: "Unite's products are exclusively sold through certain distinct channels.  Sellers of Unite's products contractually agree not to sell those products over the internet."  FAC Ex. 4.

- October 19, 2015 Letter: "Walgreens has been on notice since at least August 11, 2015 that Unite's re-sellers have a contractual obligation to not sell Unite's products online.  Walgreens therefore continues to intentionally interfere with Unite's contracts each time it purchases more Unite products by diverting product from salons through its continuing unauthorized online sales."  FAC Ex. 5.

- February 22, 2016 Letter: "As a reminder, Walgreens has been on notice since at least August 11, 2015 that Unite's re-sellers have a contractual obligation to not sell Unite's products online.  Walgreens continues to intentionally interfere with Unite's contracts each time it purchases more Unite products by diverting product from salons through its continuing unauthorized online sales."  FAC Ex. 6.

Unite properly pled Walgreens' knowledge of the contract between Unite and a third party.  But, in another example of refusing to draw all reasonable inferences in Unite's favor, and outright disregard of settled law, Walgreens argues that knowledge is not plausibly pled because the exact reseller was not identified in the demand letters.  This argument is contrary to law.

Putting aside that Walgreens knows exactly who the reseller is (and Unite will find out through discovery), by virtue of the three letters Unite sent Walgreens was on notice that the entire class of Unite resellers had restrictive contracts with Unite that Walgreens was interfering with.  *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203-04 (C.D. Cal. 2001).

It is well established that knowledge of contractual relations with a class of third parties is more than sufficient for an interference claim.  In *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203-04 (C.D. Cal. 2001), the Court explained: "Intent [to interfere] can certainly be inferred if the defendant knows that contractual relations with a third party exist, but does not know the specific identity of the

7

contractual party.  . . . .  The Court finds . . . that the Defendants were 'on notice' as to the class of contracting salons and distributors with whom Sebastian has contractual relations, and that it can be reasonably inferred from such notice that Defendants had knowledge of the class of contractual relations potentially disrupted by their actions.").  Likewise, the Ninth Circuit explained in *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005) that, "When the defendant performs the act that causes the interference, the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship."

Thus, to overcome a pleadings challenge, Unite is not required to name individual resellers.  *See, e.g., Lee Myles Associates Corp. v. Paul Rubke Enterprises, Inc.*, 557 F. Supp. 2d 1134, 1140-41 (S.D. Cal. 2008) (alleging interference with existing franchisees and "Area Development Representatives" sufficient to state claim); *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (alleging interference with "existing customers" enough to state claim); *Janda v. Madera Community Hosp.*, 16 F. Supp. 2d 1181, 1189 (E.D. Cal. 1998) (alleging defendant's tortious actions impaired economic relationships with existing patients survived motion to dismiss); *Lowell v. Mother's Cake & Cookie Co.*, 79 Cal. App. 3d 13, 19, 24 (1978) (plaintiff stated a claim by alleging the defendant intended to discourage "potential purchasers" from purchasing plaintiff's company).

Even where, unlike here, more specific information must generally be pled (e.g. under Fed. R. Civ. P. 9(b)), failure to do so is excused where more specific facts are within the exclusive knowledge or control of the defendant.  *E & E Co., Ltd. v. Kam Hing Enterprises, Inc.*, 429 F. App'x 632, 633 (Unpub. 9th Cir. 2011) (*citing Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *see Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1193 n.7 (S.D. Cal. 2015).  Unite pled that Walgreens knows the identity of the Unite reseller who has been supplying Walgreens with Unite products through covert sales.  FAC ¶ 16.  Unite cannot be

8

1  required to plead a more specific identity of the reseller that Walgreens already

2  knows, and that Unite will only be able to learn through discovery.

3         Unite has plausibly pled Walgreens' knowledge of a contract between Unite

4  and a Unite reseller.

5              **3.**    **Walgreens' Intentional Acts Were Designed to Induce a Breach or Disruption of Unite's Contractual Relationship**

6

7         Unite alleged facts showing that Walgreens acts were intentionally designed to

8  induce a breach or disruption of Unite's contracts with its authorized resellers.  This

9  element is satisfied even where "the actor does not act for the purpose of interfering

10  with the contract or desire it but knows that the interference is certain or substantially

11  certain to occur as a result of his action."  *Quelimane Co. v. Stewart Title Guaranty*

12  *Co.*, 19 Cal. 4th 26, 56 (1998).

13         Pleading Walgreens' intent (which includes knowledge of interference with

14  substantial certainty) is a low hurdle.  "Malice, intent, knowledge, and other

15  conditions of a person's mind may be alleged generally."  Fed. R. Civ. P 9(b).  The

16  First Amended Complaint more than clears that hurdle.

17         Walgreens was on notice of the contractual relationship between Unite and its

18  authorized resellers, at the very least, from the letters Unite sent.  *See* pp. 6-7, *supra*;

19  FAC Exs. 4, 5, 6.  Walgreens' intent to interfere is specifically alleged.  FAC ¶¶

20  18,19.  The last two letters to Walgreens each told it that it "continues to intentionally

21  interfere with Unite's contracts ***each time it purchases more Unite products*** by

22  diverting product from salons through its continuing unauthorized online sales."

23  FAC Exs. 5-6.  Walgreens is alleged to have intentionally interfered by continuing to

24  purchase product from a distributor for online sales even after being told that its

25  conduct was interfering with contractual relations.  *Id.* ¶23.

26

27

28

1  Unite has plausibly pled that Walgreens intentionally interfered by continuing

2  to purchase and sell Unite product online, despite notice that each purchase and sale

3  interfered with Unite's contracts.[2]

4  **4.     Actual Breach or Disruption of the Contractual Relationship**

5  Unite alleged that its authorized retailers breached contracts with Unite by

6  supplying Walgreens with Unite products for online sale, and that Walgreens was

7  aware of and induced these breaches.  *See* FAC ¶¶ 10-11, 15, 18.  The Distribution

8  Agreement attached to the First Amended Complaint states that each distributor may

9  not sell online, may not sell to resellers who have not agreed to sell online via the

10  Anti-Diversion Agreement, and may not sell to resellers who have violated the online

11  prohibition in the Anti-Diversion Agreement.  FAC Ex. 3 at 1, 3, 15-16.

12  There is no question that Walgreens purchasing from a distributor who was

13  contractually prohibited from selling to Walgreens is a plausible allegation of breach

14  or disruption of Unite's contractual relationship.

15  **5.     Resulting Damage**

16  Unite's damages allegations are anything but vague and conclusory.  It is

17  enough that Unite has pled it has suffered damages, and that the damages are

18  ongoing.  FAC ¶ 19.

19  But Unite went even further and plausibly pled details about its damage.

20  Unite's existing distributors threatened to stop selling Unite products because

21  Walgreens.com impermissibly offered Unite products for online sale.  *Id.*  In addition,

22  when Unite purchased samples of Unite products from Walgreens.com, it found that

23

24  [2] Walgreens' reference to the first-sale doctrine is an irrelevant non-sequitur of an
affirmative defense, and not properly determined on a Fed. R. Civ. P 12(b)(6) motion.
25  The first-sale doctrine provides a defense to copyright infringement, which Unite
does not allege.  The first-sale doctrine is not a defense to intentional interference
26  with contractual relations.  *Sebastian Int'l, Inc. v. Russolillo*, No. CV 00-3476 SVW
(JWJx), 2005 U.S. Dist. LEXIS 45828, at *37-39 (C.D. Cal. Feb. 22, 2005) (first-sale
27  doctrine did not bar hair-care product manufacturer's intentional interference with
contractual relations claim relating to its efforts to stop its products from being resold
28  through improper means).

the products were old and had lost much of their quality.  *Id.* ¶ 17.  Walgreens'

actions damaged the significant goodwill that Unite has worked hard to earn.  *Id.* ¶¶

7, 9, 12-14, 25, 28.  *Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d

1006, 1016 (C.D. Cal. 2013) (damage to goodwill or reputation, and monetary harm,

satisfies the damages prong of the test for intentional interference with contractual

relations).

Walgreens' uncontrolled online sales are very different from "UNITE sell[ing]

certain of its products on its own website, but only with a carefully designed platform

for consumers, including detailed self-education on each product, customer support

contact ability, and the ability to ensure fresh product is shipped to purchasers." FAC

¶12.

Each of these allegations are taken as true, despite Walgreens' improper

attempt to assert conflicting inferences and then ask the Court to resolve them against

Unite.  Thus, resulting damage has been plausibly pled, and Unite's intentional

interference claim should not be dismissed.

**B.     Unite Properly Pled its Unfair Competition Counts[3]**

**1.     Unfair Competition Under 15 U.S.C. § 1125**

Unite sufficiently pled facts showing that Walgreens violated 15 U.S.C. §

1125.  A party violates 15 U.S.C. § 1125 when it engages in conduct that is likely to

deceive as to the "origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person."

---

[3] Walgreen argues in passing that Unite "shoehorns" three causes of action into a
single claim.  Unite alleged three counts:  unfair competition under the Lanham Act,
unfair competition under the common law, and unfair competition under Cal. Bus. &
Prof. Code § 17200.  Unite's pleading supports each of these causes of action.  It is
clear that Walgreen understood the pleading, as it broke its argument out into three
separate sections.  Walgreen MTD at 9-11.  This argument also fails, and in any event
could only result in an order with leave to amend instructing the causes of action to
be separated.  *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th
Cir. 2014) ("A plaintiff should be permitted to amend a complaint to cure 'technical'
defects.") (*citing Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*)).

Here, Unite pled that it has a federally registered trademark, (FAC ¶ 8), that it sells through careful and limited authorized distribution channels (*id.* ¶ 10), that Walgreens' online sales are unauthorized and a prohibited channel, (*id.* ¶¶ 18, 23), that these sales are "likely to deceive consumers" as to the quality of UNITE products (because of their "unknown age or quality"), (*id.* ¶ 34), and are "injurious to consumers," (*id.* ¶ 32), thus constituting unfair competition. (*id.* ¶31). The sampling of Walgreens' UNITE products for sale online has shown they "were all of old products that had lost much of the quality that comes with products sold in a reasonable time period after production." *Id.* ¶ 17.

These allegations plausibly satisfy at least three separate avenues of unfair competition fitting within the express statutory language of Section 1125. First, these allegations support a claim for unfair competition as Walgreens' actions are likely to deceive consumers into believing that Walgreens' unauthorized online sales are in fact sponsored or approved by Unite. Second, these allegations also plausibly support the claim that consumers are likely to be deceived about the quality attributes of the Unite products (the "commercial activity by another person"), because the unauthorized sales are dumping old product of degraded quality into the marketplace. Third, Unite's resellers understand that Unite carefully controls the distribution of its products, and Walgreens is conveying a purported stamp of approval from Unite by offering Unite products online, harming the value of the Unite brand and Unite's relationships with its resellers.

Walgreens' actions as pled by Unite plausibly constitute unfair competition pursuant to 15 U.S.C. § 1125.

### 2.     Common Law Unfair Competition

The tort of common law unfair competition encompasses a wide variety of unscrupulous business practices. For example, a company is liable for common law unfair competition if it has engaged in acts "analogous to 'passing off,' such as the

12

sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Codexis, Inc. v. EnzymeWorks, Inc.*, 2016 U.S. Dist. LEXIS 106542, at *24 (N.D. Cal. Aug. 11, 2016) (citation omitted).  While Walgreens' myopic arguments ignore it, tortious conduct such as interference with business relationships, disparagement of a competitor's goods, and competitive injury, also fall under the unfair competition umbrella.  *Hewlett-Packard Co. v. Cigna Prop. & Cas. Ins. Co.*, 1999 U.S. Dist. LEXIS 20655, at *15-20 (N.D. Cal. Aug. 24, 1999).

Here, Unite has plausibly stated a claim for intentional interference with contractual relations, and thus Walgreens' pleadings challenge to common law unfair competition fails.

Additionally, Unite alleged that Walgreens is impermissibly selling Unite products online.  *See* FAC ¶ 28.  The products being sold by Walgreens are old and stale.  *Id.*  Walgreens is deceiving consumers because consumers believe that they are purchasing products normally associated with Unite's reputation for quality, while the products they are actually buying are being sold outside of Unite's tightly-managed distribution chain that protects the freshness and quality of its products.  *Id.* at ¶¶ 7, 9-14, 17, 28, 34, 36.  Furthermore, Walgreens is diluting the Unite brand by selling old Unite products of lesser quality than those authorized by Unite.  *Id.* at ¶ 36.  Unite is also losing sales and its distributors and resellers are threatening to drop the brand because of Walgreens' malicious conduct.  *Id.* at ¶ 19.  Walgreens cannot establish as a matter of law the "fairness" of its competition, given the authorized distribution channels carefully created by Unite for its Unite brand products.

Unite has plausibly alleged common law unfair competition against Walgreens.

### 3.    Unfair Competition Under Cal. Bus. & Prof. Code § 17200

Walgreens does not dispute that this claim is adequately stated if the intentional interference claim is plausibly pled.  As intentional interference is plausibly pled,

Unite's Section 17200 claim is also plausibly pled.  This satisfies the "unlawful" prong of the Section 17200 claim, and thus, Unite has plausibly pled its Section 17200 claim.

## IV.   CONCLUSION

For the reasons stated, Walgreens' Motion to Dismiss should be denied. Should the Court grant Walgreen's Motion to Sismiss any of Unite's claims, Unite respectfully requests leave to amend.  None of the asserted defects are incapable of cure, particularly given that Walgreens continues to purchase and sell Unite products even *after* receiving a copy of the relevant portions of the Distribution Agreement with the First Amended Complaint.

Dated:  <u>October 7</u>, 2016          MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO P.C.

By: *s/Ben Wagner*
    Andrew D. Skale, Esq.
    Ben L. Wagner, Esq.

Attorneys for Plaintiff
UNITE EUROTHERAPY, INC.

14

Case No.  3:13-cv-01906-BEN-JMA

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On October 7, 2016, I filed a copy of the following document:

**UNITE EUROTHERAPY INC.'S OPPOSITION TO MOTION TO DISMISS**

by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Michael N. Cohen | mcohen@cohenip.com, |
| Joshua H. Eichenstein | jeichenstein@cohenip.com |

Executed on October 7, 2016, at San Diego, California.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

*s/Ben L. Wagner*
Ben L. Wagner, Esq.

60170132v.4

1

Case No.  3:13-cv-01906-BEN-JMA